Troy A. Schell, Esq. (SBN 208661)
*tschell@primehealthcare.com*
Oliver Tomas, Esq. (SBN 233807)
*otomas@primehealthcare.com*
3300 East Guasti Road, Third Floor
Ontario, California 91761
Telephone: (909) 235-4400
Facsimile: (909) 235-4419

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PRIME HEALTHCARE SERVICES, INC., a Delaware corporation; ALVARADO HOSPITAL LLC, a Delaware limited liability company *dba* Alvarado Hospital Medical Center; VERITAS HEALTH SERVICES, INC., a California corporation *dba* Chino Valley Medical Center; DESERT VALLEY HOSPITAL, INC., a California corporation *dba* Desert Valley Hospital; PRIME HEALTHCARE SERVICES – GARDEN GROVE, LLC, a Delaware limited liability company *dba* Garden Grove Hospital & Medical Center; PRIME HEALTHCARE HUNTINGTON BEACH, LLC, a Delaware limited liability company *dba* Huntington Beach Hospital; PRIME HEALTHCARE LA PALMA, LLC, a Delaware limited liability company *dba* La Palma Intercommunity Hospital; PRIME HEALTHCARE SERVICES – MONTCLAIR, LLC, a Delaware limited liability company *dba* Montclair Hospital Medical Center; PRIME HEALTHCARE PARADISE VALLEY, LLC, a Delaware limited liability company *dba* Paradise Valley Hospital; PRIME HEALTHCARE SERVICES – SAN DIMAS, LLC, a Delaware limited liability company *dba* San Dimas Community Hospital; PRIME HEALTHCARE SERVICES – SHASTA, LLC, a Delaware limited liability company *dba* Shasta Regional Medical Center; PRIME HEALTHCARE SERVICES – SHERMAN OAKS, LLC, a Delaware limited liability company *dba* Sherman Oaks Hospital; PRIME HEALTHCARE ANAHEIM, LLC, a

Case No.

**COMPLAINT FOR:**

1. **Breach of Written Contract**
2. **Breach of Oral Contract**
3. **Breach of Implied-in-Fact Contract**
4. **Breach of Implied Covenant of Good Faith and Fair Dealing**
5. **Negligent Misrepresentation**
6. **Violation of Cal. Bus. & Prof. Code § 17200**

**DEMAND FOR TRIAL BY JURY**

Delaware limited liability company *dba* West Anaheim Medical Center; PRIME HEALTHCARE SERVICES – NORTH VISTA, LLC, a Delaware limited liability company *dba* North Vista Hospital; PRIME HEALTHCARE SERVICES – ST. MARY'S PASSAIC, LLC, a Delaware limited liability company *dba* St. Mary's General Hospital; PRIME HEALTHCARE SERVICES – RENO, LLC, a Delaware limited liability company *dba* Saint Mary's Regional Medical Center;

Plaintiffs,

v.

HUMANA INSURANCE COMPANY, a Wisconsin corporation; and DOES 1 – 50, inclusive;

Defendants.

**COMPLAINT**

Plaintiffs PRIME HEALTHCARE SERVICES, INC., ALVARADO HOSPITAL LLC, *dba* Alvarado Hospital Medical Center, VERITAS HEALTH SERVICES, INC. *dba* Chino Valley Medical Center, DESERT VALLEY HOSPITAL, INC. *dba* Desert Valley Hospital, PRIME HEALTHCARE SERVICES – GARDEN GROVE, LLC *dba* Garden Grove Hospital & Medical Center, PRIME HEALTHCARE HUNTINGTON BEACH, LLC *dba* Huntington Beach Hospital, PRIME HEALTHCARE LA PALMA, LLC *dba* La Palma Intercommunity Hospital, PRIME HEALTHCARE SERVICES – MONTCLAIR, LLC *dba* Montclair Hospital Medical Center, PRIME HEALTHCARE PARADISE VALLEY, LLC *dba* Paradise Valley Hospital, PRIME HEALTHCARE SERVICES – SAN DIMAS, LLC, *dba* San Dimas Community Hospital, PRIME HEALTHCARE SERVICES – SHASTA, LLC, *dba* Shasta Regional Medical, PRIME HEALTHCARE SERVICES – SHERMAN OAKS, LLC *dba* Sherman Oaks Hospital, PRIME HEALTHCARE ANAHEIM, LLC *dba* West Anaheim Medical Center, PRIME HEALTHCARE SERVICES – NORTH VISTA, LLC *dba* North Vista Hospital, PRIME HEALTHCARE SERVICES – ST. MARY'S PASSAIC, LLC *dba* St. Mary's General Hospital, PRIME HEALTHCARE SERVICES – RENO, LLC *dba* Saint Mary's Regional Medical Center

(collectively "Plaintiffs") file this Complaint against defendants HUMANA INSURANCE COMPANY, and DOES 1 – 50, inclusive (collectively, "Defendants"), and allege as follows:

## I. NATURE OF THE ACTION

1. From January 1, 2012 through February 29, 2016, Defendants underpaid and failed to pay for emergency and other health care services Plaintiffs provided to approximately 1,300 of Defendants' commercial and Medicare Advantage health plan members. Defendants failed to comply with certain written contracts, oral contracts and implied-in-fact contracts with which Defendants were bound to comply, and repudiated their obligations under those contracts. Specifically, Defendants were unilaterally and systematically downcoding Plaintiffs' billed charges, which resulted in the significant reduction of the payments for the actual services provided by Plaintiffs to Defendants' members. In addition, Defendants also failed to properly pay Plaintiffs for the inpatient services rendered to their members at the agreed upon inpatient rates. Furthermore, Defendants were improperly recouping their payments for the Plaintiffs' services in breach of the aforementioned contracts.

2. As a result of Defendants' breach, Plaintiffs were underpaid for the services they rendered to Defendants' members at a total amount exceeding **$6,529,000.00**. Plaintiffs seek full and accurate payment for all health care services they provided to Defendants' members that Defendants were obligated to pay for, together with interest at the rate of 15% pursuant to Cal. Health & Safety Code §§ 1371 and 1371.35 for the commercial claims in dispute, and at the applicable interest rate for Medicare Advantage and other claims pursuant to 28 U.S.C. § 1961, 42 C.F.R. § 405.378 and Cal. Civil Code §§ 3287 and 3289.

## II. PARTIES AND VENUE

3. At all times herein mentioned, plaintiff Prime Healthcare Services, Inc. was, and is now, a Delaware corporation with its principal place of business in Ontario, California. Prime Healthcare Services, Inc. is the sole shareholder or member of corporations or limited liability companies that own and/or operate the hospitals that are also plaintiffs in this matter.

4. At all times herein mentioned, plaintiff Alvarado Hospital, LLC was, and is now, a Delaware limited liability company qualified to do business in California as Alvarado Hospital Medical Center with its principal place of business in San Diego, California.

5. At all times herein mentioned, plaintiff Veritas Health Services, Inc. was, and is now, a California corporation doing business as Chino Valley Medical Center with its principal place of business in Chino, California.

6. At all times herein mentioned, plaintiff Desert Valley Hospital, Inc. was, and is now, a California corporation doing business as Desert Valley Hospital with its principal place of business in Victorville, California.

7. At all times herein mentioned, plaintiff Prime Healthcare Services – Garden Grove, LLC, was, and is now, a Delaware limited liability company qualified to do business in California as Garden Grove Hospital & Medical Center with its principal place of business in Garden Gove, California.

8. At all times herein mentioned, plaintiff Prime Healthcare Huntington Beach, LLC, was, and is now, a Delaware limited liability company qualified to do business in California as Huntington Beach Hospital with its principal place of business in Huntington Beach, California.

9. At all times herein mentioned, plaintiff Prime Healthcare La Palma, LLC was, and is now, a Delaware limited liability company qualified to do business in California as La Palma Intercommunity Hospital with its principal place of business in La Palma, California.

10. At all times herein mentioned, plaintiff Prime Healthcare Services – Montclair, LLC was, and is now, a Delaware limited liability company qualified to do business in California as Montclair Hospital Medical Center with its principal place of business in Montclair, California.

11. At all times herein mentioned, plaintiff Prime Healthcare Paradise Valley, LLC was, and is now, a Delaware limited liability company qualified to do business in California as Paradise Valley Hospital with its principal place of business in National City, California.

12. At all times herein mentioned, plaintiff Prime Healthcare Services – San Dimas,

LLC was, and is now, a Delaware limited liability company qualified to do business in California as San Dimas Community Hospital with its principal place of business in San Dimas, California.

13. At all times herein mentioned, plaintiff Prime Healthcare Services – Shasta, LLC was, and is now, a Delaware limited liability company qualified to do business in California as Shasta Regional Medical Center with its principal place of business in Redding, California.

14. At all times herein mentioned, plaintiff Prime Healthcare Services – Sherman Oaks, LLC was, and is now, a Delaware limited liability company qualified to do business in California as Sherman Oaks Hospital with its principal place of business in Sherman Oaks, California.

15. At all times herein mentioned, plaintiff Prime Healthcare Anaheim, LLC was, and is now, a Delaware limited liability company qualified to do business in California as West Anaheim Medical Center with its principal place of business in Anaheim, California.

16. At all times herein mentioned, plaintiff Prime Healthcare Services – North Vista, LLC was, and is now, a Delaware limited liability company qualified to do business in Nevada as North Vista Hospital with its principal place of business in North Las Vegas, Nevada.

17. At all times herein mentioned, plaintiff Prime Healthcare Services – St. Mary's Passaic, LLC was, and is now, a Delaware limited liability company qualified to do business in New Jersey as St. Mary's General Hospital with its principal place of business in Passaic, New Jersey.

18. At all times herein mentioned, plaintiff Prime Healthcare Services – Reno, LLC was, and is now, a Delaware limited liability company qualified to do business in Nevada as Saint Mary's Regional Medical Center with its principal place of business in Reno, Nevada.

19. Plaintiffs are informed and believe and thereon allege that at all times herein defendant Humana Insurance Company was, and is now, a Wisconsin corporation qualified to do business in the State of California with its principal place of business in Green Bay, Wisconsin.

20. The true names and capacities of the defendants named herein as Does 1 through 50, inclusive, whether individual, corporate, associate, or otherwise are currently unknown to Plaintiff and therefore Plaintiff alleges that each of these fictitiously named defendants is

responsible in some manner for the events sued upon. Plaintiff will seek leave of this court to amend the complaint to assert the true names and capacities of the defendants named herein as Does 1 through 50, inclusive, when said names and capacities have been ascertained.

21. Plaintiffs are informed and believe and thereon allege that at all times Defendants, and each of them, were acting as agents and/or employees of each other, and of the other defendants, and doing each of the things herein alleged or acting within the scope of said agency.

## III. JURISDICTION AND VENUE

22. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 & 1367. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

23. This Court has personal jurisdiction over Defendants because they have engaged in business transactions and wrongful conduct in the state of California and specifically in this District, and the claims alleged herein arise out of those transactions and conduct. Additionally, each of the Defendants has systematic and continuous contacts with the state of California.

24. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendants transact business in this District. In addition, a substantial part of the events giving rise to the claims were intended to, and did, cause effects in this District. Furthermore, Plaintiffs' corporate headquarters is located in this District. All billing, claims and correspondence regarding billing and claims originates in this District. All partial payments, "Explanation of Benefits" correspondence, and correspondence regarding billing and claims from Defendants in this matter are received, processed, and evaluated in this District.

## IV. FACTS

25. Defendants entered into written contracts with their members, which were generally expressed in documents titled "Evidence of Coverage" ("EOC"). Pursuant to those contracts, Defendants are required to pay health care providers for medical services that are provided to Defendants' enrollees.

26. Defendants entered into a Letter of Agreement (the "LOA") with each of the Plaintiffs in which Plaintiff has agreed to provide medical services to Defendant's Medicare Advantage health plan members. In exchange, Defendant has agreed to promptly pay Plaintiffs for the services rendered to their members according the rates set forth within the LOAs.

27. During the period between January 1, 2012 and February 29, 2016, Plaintiffs rendered medically necessary emergency and non-emergency services to Defendants' members and billed Defendants for those services pursuant to the Agreement.

28. On or about the time Plaintiffs admitted Defendants' members, Plaintiffs and Defendants had entered into oral and implied-in-fact contracts in which Plaintiff has agreed to provide medical services to Defendant's Medicare Advantage health plan members. In exchange, Defendant has agreed to promptly pay Plaintiffs for the services that were rendered to their members.

29. However, instead of paying Plaintiffs for the services they had actually rendered to Defendants' members, Defendants underpaid Plaintiffs by "downcoding" Plaintiffs' billed charges. Defendants, either directly or by and through their authorized agent, unilaterally and systematically altered the codes related to the medical services for which Plaintiffs billed then and replaced them with codes pertaining to less complex or lower-cost services or procedures. As a result of Defendants' downcoding of Plaintiffs' billed charges, the amount of payments due to Plaintiffs were substantially reduced and Plaintiffs were significantly underpaid for the actual medical services they had provided to Defendants' members.

30. In addition, Defendants failed to pay Plaintiffs for the inpatient medical services Plaintiffs had provided to Defendants' members. Defendants either denied payment for those services or paid for them at rates applicable to lower levels of care instead of the agreed-upon inpatient rates.

31. Furthermore, Defendants improperly recouped their payments for services that Plaintiffs had previously rendered to Defendants' members. Defendants not only failed to provide Plaintiffs with timely and proper notice of refund, but also failed to afford Plaintiffs with the opportunity to dispute the purported basis of Defendants' recoupment of their payments.

32. Despite demands from Plaintiffs, Defendants have failed to correctly pay Plaintiffs for the actual medical services that were rendered by Plaintiffs to Defendant's members.

33. As a result of the refusal of Defendants to properly pay Plaintiffs for the services that were rendered to their members, Plaintiffs have been damaged in an amount to be proven at trial but not less than the sum of **$6,529,000.00**, exclusive of interest.

**FIRST CAUSE OF ACTION**

**(Breach of Written Contract)**

**(Against All Defendants)**

34. Plaintiffs hereby repeat, replead, and incorporate herein by reference each and every allegation contained in paragraph 1 through 33, inclusive, as though fully set forth at this point.

35. The LOAs obligate Defendants to promptly pay Plaintiffs for the services that Plaintiff rendered to Defendants' Medicare Advantage health plan members according to the rates set forth within the LOAs.

36. During the period between January 1, 2012 and February 29, 2016, Plaintiffs rendered services to Defendants' Medicare Advantage health plan members and billed Defendants for those services pursuant to the LOAs.

37. Defendants, however, breached the LOA by failing to correctly pay Plaintiffs for the services rendered to their Medicare Advantage health plan members as required by the terms of the LOAs. Specifically, Defendants' downcoding of Plaintiffs' billed charges, non-payment of the inpatient services, and unauthorized recoupment of payments resulted, as Defendants had intended, in Plaintiffs being significantly underpaid for those rendered services.

38. Plaintiffs have performed all conditions and covenants required of it under the terms of the LOAs except those which have been excused by Defendants' failure to perform.

39. As a direct and proximate result of Defendants' breach of the LOAs, Plaintiffs have suffered damages in the amount of **$6,529,000.00**, exclusive of interest.

**SECOND CAUSE OF ACTION**

**(Breach of Oral Contract)**

**(Against All Defendants)**

40. Plaintiffs hereby repeat, replead, and incorporate herein by reference each and every allegation contained in paragraph 1 through 39, inclusive, as though fully set forth at this point.

41. On or about the time Plaintiffs admitted Defendants' members, Plaintiffs contacted Defendants and spoke with Defendants' representatives to verify their members' eligibility under Defendants' health plans and to confirm that Defendants would pay for the services provided. In response, Defendants' agents orally represented that: i) their members were eligible beneficiaries under the health plans; ii) Plaintiffs were authorized to render medically necessary services to their members; and, iii) based on the authorizations, Plaintiffs would be reimbursed for the services provided to Defendants' members at 100% of Plaintiffs' billed charges. Plaintiffs promised to provide, and did provide, medically necessary services to Defendants' members. Based upon such promises, Plaintiffs and Defendants entered into oral contracts regarding the rendering of services to Defendants' members and payment for those services.

42. Plaintiffs have performed all conditions required by it on its part to be performed in accordance with the terms and conditions of the oral contracts.

43. Defendants breached the oral contracts by failing to pay Plaintiffs 100% of its billed charges for the services rendered to Defendants' members. Specifically, Defendants' downcoding of Plaintiffs' billed charges, non-payment of the inpatient services, and unauthorized recoupment of payments resulted, as Defendants had intended, in Plaintiffs being significantly underpaid for those rendered services.

44. As a direct and proximate result of Defendants' breach of the oral contracts, Plaintiffs have suffered damages in the amount of **$6,529,000.00**, exclusive of interest.

////

////

**THIRD CAUSE OF ACTION**

**(Breach of Implied-in-Fact Contract)**

**(Against All Defendants)**

45. Plaintiffs hereby repeat, replead, and incorporate herein by reference each and every allegation contained in paragraph 1 through 41, inclusive, as though fully set forth at this point.

46. Prior to the treatment rendered by Plaintiffs, Plaintiffs and Defendants impliedly agreed and understood that Plaintiffs would render services to Defendants' members, submit bills for such services to Defendants, and the Defendants would pay Plaintiffs at 100% of Plaintiffs' billed charges, as full and final settlement of such care.

47. On or about the time Plaintiffs admitted Defendants' members, Plaintiffs and Defendants had entered into implied-in-fact contracts as demonstrated by the actions and conduct of Defendants. Plaintiffs allege that Defendants offered to reimburse Plaintiffs, should Plaintiffs provide services to Defendants' members, at 100% of Plaintiffs' billed charges. Plaintiffs accepted that offer and did in fact provide services to Defendants' members. Plaintiffs properly billed Defendants for the services, and Defendants did in fact actually reimburse Plaintiffs for a portion of the services rendered in partial compliance with the implied-in-fact contracts.

48. Plaintiffs performed all conditions required on its part to be performed in accordance with the terms and conditions of those implied-in-fact contracts. Plaintiffs reasonably relied on Defendants' promises and conduct to pay for the services and continued treating Defendants' members in reliance on those promises and upon such conduct.

49. Defendants breached that implied-in-fact contract by underpaying Plaintiffs for the services rendered to Defendants' members. Specifically, Defendants' downcoding of Plaintiffs' billed charges, non-payment of the inpatient services, and unauthorized recoupment of payments resulted, as Defendants had intended, in Plaintiffs being significantly underpaid for those rendered services.

50. As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiffs have suffered damages in the amount of **$6,529,000.00**, exclusive of interest.

**FOURTH CAUSE OF ACTION**

**(Breach of Covenant of Good Faith and Fair Dealing)**

**(Against All Defendants)**

51. Plaintiffs hereby repeat, replead, and incorporate herein by reference each and every allegation contained in paragraph 1 through 50, inclusive, as though fully set forth at this point.

52. There is and was implied in fact and in law in the contracts alleged herein a covenant of good faith and fair dealing whereby Defendants impliedly covenanted that they would act in good faith and in the exercise of fair dealing, deal with Plaintiffs fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs' rights under the contracts.

53. However, Defendants breached the implied covenant of good faith and fair dealing by failing to correctly pay Plaintiffs for the services rendered to Defendants' members as required by the terms of the contracts. Specifically, Defendants' downcoding of Plaintiffs' billed charges, non-payment of the inpatient services, and unauthorized recoupment of payments resulted, as Defendants had intended, in Plaintiffs being significantly underpaid for those rendered services.

54. As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiffs have suffered damages in the amount of **$6,529,000.00**, exclusive of interest.

**FIFTH CAUSE OF ACTION**

**(Negligent Misrepresentation)**

**(Against All Defendants)**

55. Plaintiffs hereby repeat, replead, and incorporate herein by reference each and every allegation contained in paragraph 1 through 51, inclusive, as though fully set forth at this point.

56. As stated above, Plaintiffs agreed to provide services to Defendants' members, in exchange for which Defendants' agreed to pay Plaintiffs at 100% of Plaintiffs' billed charges.

57. On or about the time Plaintiffs admitted Defendants' members, Defendants'

agents orally represented that: i) their members were eligible beneficiaries under the health plans; ii) Plaintiffs were authorized to render medically necessary services to their members; and, iii) based on the authorizations, Plaintiffs would be reimbursed for the services provided to Defendants' members at 100% of Plaintiffs' billed charges.

58. Those representations were false (or were made without a reasonable basis for believing them to be true) in that Defendants had no intention to pay Plaintiffs at 100% of Plaintiffs' billed charges for the services rendered to Defendants' members.

59. Defendants intended Plaintiffs to rely on the aforementioned misrepresentations to induce Plaintiffs to render and/or continue rendering services to Defendants' members and abjure from making alternative financial arrangements with those members.

60. Plaintiffs reasonably relied on those misrepresentations.

61. Defendants refused and continued to refuse to pay Plaintiffs the full amount due despite the earlier representations of Defendants' agents to the contrary. Specifically, Defendants' downcoding of Plaintiffs' billed charges, non-payment of the inpatient services, and unauthorized recoupment of payments resulted, as Defendants had intended, in Plaintiffs being significantly underpaid for those rendered services.

62. As a direct and proximate result of the aforementioned misrepresentations, Plaintiffs were obstructed from pursuing other avenues of reimbursement, rendered services on false pretenses, and have suffered substantial detrimental damages in the principal sum of **$6,529,000.00**, exclusive of interest.

## SIXTH CAUSE OF ACTION

**(Violation of Cal. Unfair Competition Law, Business & Professions Code § 17200)**

**(Against All Defendants)**

63. Plaintiffs hereby repeat, replead, and incorporate herein by reference each and every allegation contained in paragraph 1 through 51, inclusive, as though fully set forth at this point.

64. Defendants offer HMO products that are regulated by the California Dept. of Managed Health Care (DMHC), and are therefore subject to all the requirements of the Knox-

Keene Act. Among those requirements, Cal. Health and Safety Code §§ 1262.8, 1371, 1371.35, 1371.4, 1371.8, and Title 28 of the Cal. Code Regulations, § 1300.71(a)(3), require Defendants to reimburse Plaintiffs for emergency services rendered to their members.

65. Defendants also offer Preferred Provider Products (PPO) products regulated by the California Dept. of Insurance (CDI) and subject to Cal. Insurance Code §§ 10123.13, 10123.147 & 10133(a), which require insurers, including Defendants, to promptly and directly reimburse providers for care provided by hospitals to their insureds.

66. Defendants failed to reimburse Plaintiffs for services provided to Defendants' members according to the requirements of Cal. Health and Safety Code §§ 1262.8, 1371, 1371.35, 1371.4, 1371.8, and Title 28 of the Cal. Code Regulations, § 1300.71(a)(3), and Cal. Insurance Code §§ 10123.13, 10123.147 & 10133(a). Specifically, Defendants' downcoding of Plaintiffs' billed charges, non-payment of the inpatient services, and unauthorized recoupment of payments resulted, as Defendants had intended, in Plaintiffs being significantly underpaid for those rendered services.

67. These violations of the Cal. Health and Safety Code and Cal. Insurance Code, among others, constitute an unfair business practice by Defendants under Cal. Business and Professions Code § 17200. Plaintiffs are entitled to restitution of the amounts wrongfully withheld by Defendants. Plaintiff is entitled to attorney's fees incurred in obtaining relief from those violations.

68. Plaintiffs seek equitable relief from Defendants' acts of unfair competition in the form of disgorgement of the difference between the amounts that Defendants should have paid Plaintiff for the rendered services and the amounts that Defendants actually paid, plus interest at the maximum rate allowed by law.

69. Plaintiffs also seek permanent injunctive relief permanently enjoining Defendants from engaging in the aforementioned unfair business practice in violation of Cal. Health and Safety Code §§ 1371 & 1371.35 and/or Cal. Insurance Code §§ 10123.13, 10123.147 & 10133(a).

////

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. for the principal sum of **$6,529,000.00**;

2. for interest on such principal sum at the rate of 15% per annum, pursuant to Cal. Health & Safety Code § 1371 and 1371.5; or, in the alternative, for interest on such principal sum at the rate of 10% per annum, pursuant to Cal. Civil Code § 3289; and the applicable interest rate for Medicare Advantage and other claims pursuant to 28 U.S.C. § 1961 and 42 C.F.R. § 405.378;

3. for permanent injunctive relief permanently enjoining Defendants from engaging in the aforementioned unfair business practice in violation of Cal. Health and Safety Code §§ 1371 & 1371.35 and/or Cal. Insurance Code §§ 10123.13, 10123.147 & 10133(a);

4. for costs of suit incurred herein; and

5. for such other and further relief as the Court deems just and proper.

Dated: May 13, 2016

**TROY A. SCHELL, ESQ.**
**OLIVER TOMAS, ESQ.**

By: /s/ Oliver Tomas
OLIVER TOMAS
Attorneys for Plaintiffs

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands trial by jury.

Dated: May 13, 2016

**TROY A. SCHELL, ESQ.**
**OLIVER TOMAS, ESQ.**

By: /s/ Oliver Tomas
OLIVER TOMAS
Attorneys for Plaintiffs